# Nimick & Co. *versus* Holmes & Co.

Where a vessel or its cargo takes fire without the fault of the crew, the damage done by the application of water or steam in extinguishing the fire, and by tearing up part of the vessel to gain access to the fire, is general average: and it makes no difference how the water is applied, whether by the aid of fire-engines from the land, or in the form of steam, or by scuttling the vessel.

A general average consists in a purpose, a means, and a result : a design to avert a common danger by a sacrifice voluntarily made, and a successful issue.

In an action by a shipper against the owners of a vessel for general average, evidence that the shipper had received from the underwriters the amount for which the goods lost were insured is irrelevant; nor is the amount so received evidence of the value of the goods.

ERROR to the District Court of *Allegheny county.*

This was an action of *assumpsit* brought by William Holmes & Co. against Charles A. Israel and others, owners of the steamboat " Susquehanna," for the loss of ninety-six hogsheads of

[Nimick *v.* Holmes.]

sugar, shipped by Holmes & Co., upon the said steamboat, from Cincinnati to Pittsburgh, upon a bill of ladng, exceptiing the unavoidable dangers of the river and fire.

While the boat was lying at the wharf in Cincinnati, on the 4th May, 1852, taking in a cargo for Pittsburgh, which consisted principally of sugar, cotton, bacon and oil, she was discovered to be on fire in the hold. The cause of the fire was unknown. The hatches were closed down, and preparations made for getting up steam and injecting it into the hold, by means of apparatus provided for that purpose, and also water was introduced by means of hose. In about an hour after the discovery of the fire, the steam-pipes were brought into play, and turned into the interior of the boat, where they continued to operate for fourteen hours or more. The fire, however, still making progress, and the officers of the boat believing there was no other possible means of saving the boat and cargo, determined, after consultation among themselves, and with various other persons, upon the expedient of scuttling her. They accordingly ran the boat out into the river, about two miles from the wharf, and there sunk her on a bar. A portion of the deck was torn up, and water introduced from above, and by these means the fire was subdued and extinguished. In a few hours afterwards, the boat was raised and taken back, with the remnant of the cargo, to Cincinnati, where the cargo was sold. The cargo was injured to about seventy-five per cent. of its value, and the boat and cargo, together, to the value of about twenty-five per cent. of their entire value.

The declaration contained four counts. The first count was on the bill of lading against the defendants as common carriers : the second, a special count for contribution on a general average : the third, a general count for general average : and the fourth, for money had and received.

The plaintiffs, on the trial, gave in evidence the bill of lading, and proved the value and non-delivery of the sugar, and rested.

The defendants then introduced the proof of the special facts and circumstances above stated. And, in the course of the trial, called Franklin E. Gordon, and proposed to prove by him that the present plaintiffs had been fully paid by the insurance company, before the bringing of this suit, and the amount which the insurance company paid in discharge of their policies, as evidence of the admission of the parties of the amount of injury sustained. The plaintiff's counsel objected, on the ground of the irrelevancy of the testimony, and it was excluded by the Court—to which defendants' counsel excepted. The evidence given in the case showed that both boat and cargo were in imminent peril, and that the introduction of steam and water into the hold, the scuttling of the boat, and the tearing up of the deck were resorted to,

[Nimick *v.* Holmes.]

for the purpose of preventing the entire destruction of the boat and cargo, and were necessary to accomplish that end.

The defendants' counsel presented eleven points to the Court below, in which they prayed the instruction of the Court to the jury, that the facts and circumstances in evidence did not constitute a case of general average.

The general instructions of the Court below (HAMPTON, P. J.) were summed up as follows:—

"All the means employed for the safety of the boat and cargo, from the time the fire was discovered until its final extinction, though differing in form as circumstances required, yet having the same object in view, are to be taken together and considered as but one act. The principle is the same, whether the same quantity of water had been thrown into the boat by means of machinery, while lying at the wharf, or rushed in of its own accord from the river, through apertures made in the sides for that purpose, and the position of the boat was only changed for the sake of rendering the latter operation more speedy and efficacious. The consequences to the cargo in either case must be the same.

"If, then, you believe from the evidence there was a common danger both to the boat and cargo, which was imminent and apparently inevitable, except by voluntarily causing the loss and injury that were done to the vessel, and a portion of the cargo, in order to save the remainder, and that by these means so employed, the vessel and a portion of the cargo were saved, then the plaintiffs will be entitled to your verdict on the footing of a general average."

The jury found for the plaintiffs $5076.61—$4073.40, part thereof, on the second count for general average, and $1003.21, residue thereof, on the last count for money had and received, and for the defendants on the other counts.

The defendants sued out this writ, and assigned for error the rejection of the testimony proposed to be proved by Franklin E. Gordon, and the instructions of the Court to the jury.

*T. Williams* and *G. P. Hamilton,* for plaintiffs in error.—The evidence of Gordon was admissible in two aspects: first, as the measure of the plaintiffs' right without regard to value; and, secondly, as evidence of the value itself. The insurance company were the real plaintiffs, and their rights could not exceed what they had paid. The objection cannot be met by the suggestion that the surplus would enure to the benefit of the legal plaintiffs. They were satisfied, and the offer involved the proof of that fact. What evidence of value could be more satisfactory than the declaration of both the real and equitable plaintiffs?

General average can only be claimed where, in case of peril, a

[Nimick v. Holmes.]

portion of the property is purposely, premeditatedly, and intentionally *sacrificed* for the benefit of the whole. The essence of general average is the voluntary sacrifice of a portion for the benefit of the whole with a successful result. The application of water and steam were remedial acts, and had nothing of devotion in them—intended, not to peril a part, but to relieve the whole.

The owners of the vessel and cargo are not mutual insurers, no more than the owner of a building and the owner of the goods in it are. Here there was no act imperilling any particular portion of the cargo. The application of the water and steam, if it imperilled anything, it was the *whole*. So in regard to the scuttling. It did not transfer the peril from the whole to any part. The water and steam were thrown upon them indiscriminately; in scuttling all went down together. It was alleviation and improvement, and not sacrifice, either actual or intended.

The rule requires that there shall be a sacrifice, and an intentional one; and that there shall be a *jactus* of some *portion* of the cargo, and that it shall be an act of the *mind* and done upon *deliberation*. Does this case come up to the requisitions? Was it a sacrifice of a *part* for the benefit of the *whole?* Was there a transfer of the peril to any particular portion? There was no selection, no severance, no casting away, no transfer of risk; for to speak of a transfer of risk to the whole, would be an absurdity. Each was bound to take its own risk, unless they were mutual insurers, which it is admitted they were not.

The doctrine here contended for is clearly established by the late very distinguished Chief Justice GIBSON, in the case of Walker *v.* The United States Insurance Company, 11 *S. & R.* 65. And in a still later case by the learned Judge KENNEDY, in Meech *v.* Robinson, 4 *Wh. Rep.* 362.

It is no answer to these cases to produce the conflicting case of Sims *v.* Gurney, 4 *Binn.* 513. Judge YEATES, who tried the cause at Nisi Prius, and Chief Justice TILGHMAN, speak doubtingly of it; and Judge KENNEDY says, in Meech *v.* Robinson, its doctrine has been shaken, if not overruled, by the case of Walker *v.* The Insurance Company.

The learned counsel also referred to 1 *Holt's N. P. Cases* 192; (3 *Eng. Com. L. Rep.* 69); 2 *Phillips* 101; 3 *Fairfield's (Verm. Rep.)* 190.

*A. W. Loomis* and *Stanton*, for defendants in error.—We claim that the Court is fully sustained in the rejection of Gordon's testimony, by the case of Gales *v.* Hailman, 1 *Jones* 515.

The only remaining question is, had the plaintiffs a right to recover for general average?

*Assumpsit* is the proper action: 1 *East Rep.* 220.

The case of Sims *v.* Gurney, 4 *Binn.* 513, was an action of

*assumpsit.* Chancellor KENT says : The doctrine of general average is one of those rules of the marine law which is built upon the plainest principles of justice ; and it has, accordingly, recommended itself to the notice and adoption of all the commercial nations of the world: 3 *Comm.* 233. The doctrine is as simple as it is just. Judge KENNEDY says, in Meech *v.* Robinson, 4 *Whart.* 363, " When the property of one is deliberately sacrificed for the benefit of the others, so that thereby his loss is made directly to promote their gain, he becomes entitled to claim restitution:" 3 *Kent's Com.* 333–4. It is the deliverance from an immediate pending peril by a common sacrifice, which constitutes the essence of the claim. It is the safety of the property, and not the voyage, which constitutes the foundation of general average: Col. Insurance Company *v.* Stribley *et al.*, 13 *Peters' Rep.* 331 ; 2 *Arnold on Ins.* 902 ; 3 *Kent's Com.* 239.

In Sims *v.* Gurney, TILGHMAN, C. J., says : " It is not necessary that the ship should be exposed to greater danger than she otherwise would have been, to make a case of general average. It is sufficient if a certain loss is incurred for the common benefit."

In the case of Caze *v.* Reilly, 3 *Wash. C. C. Rep.* 302, it is said, " if the cargo and ship, or any part of either, be voluntarily sacrificed or exposed to danger for the common safety, the part saved shall contribute to repair the loss sustained, provided the object for which the sacrifice was made was attained." The case of Barnard *et al. v.* Adams *et al.*, 10 *Howard's Rep.* 303, contains a most clear, convincing, and authoritative exposition of the law of general average. To constitute a case of general average, three things must concur : 1st. A common danger, imminent and apparently inevitable. 2d. A voluntary *jactus* of some portion of the joint concern, for the purpose of avoiding this peril. 3d. The attempt to avoid this imminent common peril must be successful.

Applying these doctrines to the case in hand, can there be a doubt that the recovery for general average was proper ? The uncontradicted testimony shows that both boat and cargo were in imminent peril. All that was done, was done deliberately and judiciously, for the protection and preservation of all interests from a common peril and a common destruction. It gave to both vessel and cargo, so far as prejudiced by these acts, a just and legitimate claim to compensation.

The charge of the Court below was a most clear and comprehensive summary of the law, as established by the highest authorities in the land, which this Court is asked to reverse, upon the authority of cases that, instead of overthrowing, sustain the law, as expounded by his Honour in the Court below.

The learned gentlemen here reviewed the cases cited on the other side.

[Nimick v. Holmes.]

The opinion of the Court was delivered by

LOWRIE, J.—Though the Rhodian law *de jactu* provided for contribution only in the case of goods cast overboard in times of peril, yet the spirit of the regulation is in its reason, which is, because the act was done for the benefit of all; and it was this reason, rather than the limited expression of it, that was applied in the Roman jurisprudence: *Dig.* 14, 2. And if the adoption of the Rhodian law by Augustus and Antonine is the only evidence that the Romans derived their law of marine contribution from the Rhodians, then it is fully met by the text (*Dig.* 14, 2, 2, 3), which refers, for the same principle, to the Roman lawyers, Servius, Labea, and Ofilius, who flourished in the time of Julius Cæsar; and the absence of all reference to the Rhodian law, in the cases mentioned in the Digest, seems to show that the regulation was part rather of their common than of their statute law. And, while it may be doubted, perhaps, whether our law of average was in fact derived from the Romans, it is very plain that the Roman law on this subject has had great influence in moulding and defining that of all modern commercial nations. The equity of the rule is so obvious to natural reason, that it may very well be supposed that the practice might grow up spontaneously, wherever naval commerce existed. The name average, given to it in nearly all European languages, would seem to strengthen this supposition, for this is not at all of Roman origin; and a modern Latin word, *avaria*, had to be invented to express it, as the word *contributio* did not express the same idea. Average means ship damage, and not contribution, as is plain when we speak of particular average. The average of common parlance is a secondary sense of the word, derived from the practice of contribution in cases of general average.

But whencesoever the practice may have been derived into the law of modern nations, it may be said that, for America, England, and continental Europe, there is but one law on this subject; and its unity is preserved by the simplicity of the principle embodied in it, and by the fact that all treatises, European and American, on this subject, like those on international law, are regarded as the common property of the commercial world.

In the *Ordinatio Nautica* of the Hanseatic Cities, title 8, which was compiled in 1614 from more ancient customs and ordinances, there is a law on this subject, which is scarcely more comprehensive than the Rhodian law *de jactu;* but Reinold Kuricke, in his commentary upon it, shows that its practical interpretation has been as large as the reason upon which it is founded, and he quotes from Weitsius the rule, that every loss, suffered by ship or cargo for the purpose of averting a common danger, is a subject of general average.

Locconius (*De Jure Maritimo* 2, 8, 7), says that equity and

expediency require this extensive interpretation, and that it is easy to apply the rule according to its reason to all cases of sacrifice for the common safety as they arise.

The rule is laid down in all its breadth by the commentators on the Digest, 14,2.  Pothier merely repeats what he finds there; but Voët generalizes the cases, and declares that, no matter where the act is done, or under what circumstances of danger, if there be a sacrifice of part for the safety of the rest, and without any fault of the master, it is a case of general average.  Noodt says that, whatsoever may be the nature of the sacrifice, it is at the common expense, if it is for the common safety.  *In pari causa, par jus servatur, etiam cum verba legis deficiunt.*  Huber says the same.

Mittermaier (*Grundsätze des deutschen Privatrechts*, § 317) says, to general average belongs every intentional sacrifice made for the purpose of averting or mitigating a danger that is common to both ship and cargo; and he cites very freely the English and American works on this subject, that are familiar to us all.

Vincens (3 *Legislation Commerciale* 186) declares that all the damages deliberately suffered for the common safety, and all the time expended in repairing them, must be taken as general average. To this rule there are no exceptions.

It is unnecessary to repeat the quotations of our own authorities, made by the counsel, for they all declare and illustrate the same principle.  In all European and American treatises, we find the same sorts of instances given, and they all tend to enforce the broad rule of general average already expressed in various forms. Thus the following instances of sacrifice have been declared cases of general average : goods cast overboard; masts, rigging, anchors, and boats cut away; the hire of lighters, and the goods lost thereby; the hire of armed convoy; the damage incurred in order to evade a hostile pursuit; damage from an engagement with pirates, including the rewards to the crew, the healing of the wounded, and the burial of the dead; the sinking of a vessel in a crowded port, in order to prevent the fire of an adjoining one from spreading to the others; the cutting of the cable of one in order to save others; the voluntary stranding of the ship; ransom from pirates; compromise with captors; seeking port and refitting after an inevitable accident; and the excess of damage or expense borne by one of several ships, sailing in company, in defending against a common enemy.

In some countries a consultation is required before the sacrifice is made; but that form is resorted to only as a means of deciding upon and proving its necessity, and is not a part of our law, for it may be otherwise proved.  An analysis of the cases very plainly reveals three things as the elements of general average : a purpose, a means, and a result; a design to avert a common danger

[Nimick v. Holmes.]

by a sacrifice voluntarily made, and a successful issue. The first and the last are perfectly definite in their character, while the means must always remain to be defined by the rule of prudence when the danger arises.

Guided by the light of the rule and its instances, we feel constrained to say that when a vessel or its cargo takes fire without the fault of the crew, the damage done by the application of water or steam in extinguishing the fire, and by tearing up part of the vessel in order to get at it, is general average. The danger is a common one, and the cost of the remedy must be common. It makes no difference how the water is applied: by the aid of fire-engines on the land, or in the form of steam, or by scuttling the vessel. All these modes were tried in this case before the success was complete. They are all to be treated together, because they all referred to the same peril. They were the means employed for the purpose of averting the danger in which they were placed. It was a sacrifice for the common safety, for it was intentionally injuring or destroying all that part of the cargo that could be thus affected by water, in order to save the rest. The result was successful if a single article was saved by the means employed. Without attempting to follow the counsel in their minute criticism upon the charge to the jury, we may say that it was entirely correct.

There is an exception to the admission of evidence, but it also is unfounded.

Judgment affirmed.